IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

WILLIAM CONRAD                    *
                                  *
v.                                *     Civil Action No. WMN-13-3730
                                  *
CSX TRANSPORTATION, INC.          *
                                  *
                                  *
    *    *    *    *    *    *    *    *    *    *    *    *    *    *    *

## MEMORANDUM

Before the Court is Defendant CSX Transportation's Motion for Summary Judgment.  ECF No. 19.  The motion is fully briefed and ripe for review.  Upon a review of the papers, facts, and applicable law, the Court determines (1) that no hearing is necessary, Local Rule 105.6, and (2) the motion will be granted.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff William Conrad (Mr. Conrad) brings this action against CSX Transportation (CSX) alleging violations of the Federal Rail Safety Act (FRSA) 49 U.S.C. § 20109.  Mr. Conrad is a conductor for CSX and has been employed by CSX since April 27, 2003.  He is also a member of United Transportation Union Local 340 and served as Local Chairman from 2009 to 2012.  CSX is a freight railroad operating over 20,000 miles of track in 23 states, the District of Columbia and two Canadian provinces.  Conrad works mostly in the Cumberland Yard, part of CSX's

Baltimore Division, which covers territory in Maryland, Pennsylvania, Washington, D.C., and West Virginia.

Mr. Conrad's cause of action arises from two "serious offense" violations brought against him by CSX which, he alleges, were in retaliation for two incidents where he reported CSX safety violations and objected to his Union Members being asked to engage in what he saw as unsafe conduct. These incidents are referred to as the "Deineen Incident" and the "Demmler Yard Incident."

**A. The "Deineen Incident"**

In January 2011, Conductor and Local 340 member James Deineen was injured while applying a handbrake on duty. After his injury and before the end of his shift, Deineen called Mr. Conrad to ask what he should do. Mr. Conrad told him to make sure he reported his accident before clocking out for the day. Deineen took Mr. Conrad's advice, reported his accident, and ended his shift. After submitting his time card, his managers asked Deineen to return to the train-yard and recreate his accident. Deineen called Mr. Conrad again, this time inquiring as to whether he should comply with those directions. Believing that Deineen was due for a rest period as required by the Hours of Service Act, Mr. Conrad advised Deineen not to return to the yard. Afterward, Mr. Conrad reported the incident to a Federal

Railroad Administration representative after first informing
Trainmaster Ron Baer of his intent to do so.

Then, in February 2011, four CSX managers – Trainmaster
Mike Drummond, Trainmaster Eric Koelker, Cumberland Terminal
Superintendent Ray Morriss, and Assistant Terminal
Superintendent Keith Stafford - were stopped along the line of
road west of Cumberland in order to observe an approaching
train.  Mr. Conrad, the conductor of the train, stopped the
train at a bow-handled switch and, according to the managers,
before checking the switch, operated it with one hand.  Mr.
Stafford spoke with Mr. Conrad about the potential infraction.
CSX charged Mr. Conrad with a "serious offense" for violating
the safety policy requiring a conductor to check the switch
before operating and then to operate the switch with two hands.
Mr. Conrad requested an administrative "time out"[1] in lieu of a
formal discipline procedure.  The time out request was granted
and the meeting – for which Conrad was paid – was held on March
3, 2011.

---

[1] A "time out" is an alternative to sanction under CSX's
Individual Development and Personal Accountability Policy
(Policy).  The time out is a meeting between the employee,
Division Manager, and union leader to discuss the "root cause
and corrective solution" of the offending conduct.  After the
time out, a note is placed in the employee's file of the
occurrence of a time out and relevant follow-up actions.  ECF
19-32 at 4.

**B. The "Demmler Yard Incident"**

In August 2011, Mr. Conrad received a call from engineer and Local 340 member Scott Sechler regarding a developing situation outside of the Demmler Yard in western Pennsylvania. Sechler's train ran out of fuel near the Yard and was blocking the CSX main line.  Sechler and his crew had been ordered to retrieve a locomotive from the Demmler Yard to move the train. Sechler, however, was concerned that he and his crew were not qualified to enter the yard because of its low clearances and potentially unsafe areas.  Mr. Conrad, based on his knowledge of a settlement agreement between CSX and the Pennsylvania Public Utilities Commission, forbid Sechler and his crew from entering the Demmler Yard because they were not trained in handling the low clearance conditions in the Yard.  Mr. Conrad reemphasized the safety risk in conversations with Trainmaster Danielle Renner.

Later that month, Senior Road Foreman of Engines Bill Diamond and Mr. Baer were performing operational testing in CSX's Cumberland Yard where Conrad was operating a train.  That afternoon, Mr. Diamond and Mr. Baer assert that they observed Conrad operate in the Yard without his radio on, fail to use proper identification in conducting a radio check, and fail to use both hands at all times when operating a switch.  CSX formally charged Conrad for these violations.  There has been no

hearing on the second charge since Conrad has been away from work due to an injury.

Upon exhausting his administrative remedies, Conrad filed this action. The parties have engaged in discovery, and CSX moved for summary judgment on all counts. ECF No. 19. The Court initially denied summary judgment, ECF No. 27 and 28, and CSX moved for reconsideration, noting that the Court's opinion did not address all of its dispositive arguments. ECF No. 29. In reviewing the file and in the interest of avoiding duplicative briefing, the Court agreed and vacated its prior memorandum and order to reconsider CSX's motion for summary judgment. ECF No. 30. The Court will grant CSX's Motion for Summary Judgment in light of Mr. Conrad's failure to carry his burden and demonstrate that CSX employees involved in his discipline knew of his safety enforcement activities.

## II. LEGAL STANDARD

Summary judgment is appropriate if the record before the court "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). See also Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987) (noting that trial judges have "an affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial" (internal

quotation marks omitted)).  A fact is material if it might

"affect the outcome of the suit under the governing law."

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In

determining whether there is a genuine issue of material fact,

the Court "views all facts, and all reasonable inferences to be

drawn from them, in the light most favorable to the non-moving

party."  Housley v. Holquist, 879 F. Supp. 2d 472, 479 (D. Md.

2011) (citing Pulliam Inv. Co. v. Cameo Properties, 810 F.2d

1282, 1286 (4th Cir. 1987)).

## III. DISCUSSION

The FRSA incorporates by reference the rules and procedures

in the Wendell H. Ford Aviation Investment and Reform Act for

the 21st Century (AIR-21).  49 U.S.C. § 20109(d)(2)(A).  AIR-21

establishes a two-part burden-shifting test.  First, the

employee must show, by a preponderance of the evidence, that

"(1) [he] engaged in protected activity; (2) the employer knew

that [he] engaged in the protected activity; (3) [he] suffered

an unfavorable personnel action; and (4) the protected activity

was a contributing factor in the unfavorable action."  Feldman

v. Law Enforcement Assocs. Corp., 752 F.3d 339, 344 (4th Cir.

2014).  Then, the burden shifts to the employer to demonstrate

"by clear and convincing evidence, that the employer would have

taken the same unfavorable personnel action in the absence of

[the protected activity]."  Livingston v. Wyeth, Inc., 520 F.3d

344, 351 (4th Cir. 2008) (alterations in original).  Since the
FRSA has stipulated the application of a particular burden-
shifting framework, we do not apply the more well-known
McDonnell-Douglas[2] burden-shifting framework.  Araujo v. New
Jersey Transit Rail Operations, Inc., 708 F.3d 152, 157 (3rd
Cir. 2013).

As to the second requirement that an employer know of
plaintiff's protected activity, the parties present alternative
theories of what constitutes knowledge.  CSX argues that, in
order to establish a prima facie case of retaliation, "it is not
enough to show that someone at the company was aware of the
alleged protected activity; the plaintiff must show that the
individual who decided on the alleged retaliatory employment
action was aware of it."  ECF No. 19-1 at 27.  Accordingly, CSX
provides declarations from the supervisors who assessed Conrad's
discipline, attesting to the fact that each was unaware of Mr.
Conrad engaging in protected activity prior to Conrad's first
infraction.  ECF No. 19-19, ¶¶ 14-17 (Morriss Decl.);   ECF No.
19-30 ¶¶  8-10 (Stafford Decl.);   ECF No. 19-17 ¶¶  5-7
(Drummond Decl.); ECF No. 19-18 ¶¶ 6-8 (Koelker Decl.).  CSX
also provides declarations from both engineers that assessed Mr.
Conrad's second infraction, ECF Nos. 19-14 (Diamond Decl.) and
19-3 ¶¶ 12-14 (Baer Decl.), attesting that Mr. Baer did not

---

[2] McDonnell Douglas Corp. v. Green, 411, U.S. 792 (1973).

speak to Mr. Conrad about the Demmler Yard incident and did not recall any safety complaints made by Mr. Conrad and Mr. Diamond did not know of the incident.  CSX concludes that, since the individuals who evaluated Mr. Conrad's infractions did not know of his protected activity, as a matter of law one could not conclude that "the railroad knew of his protected activity," Araujo, 708 F.3d at 157, and summary judgment should be granted.

Mr. Conrad counters that "a decision maker's claim he was ignorant of the protected activity is not determinative, and the judge or jury is free to find the undemanding contributing factor causation standard is satisfied based on direct evidence or circumstantial evidence such as temporal proximity, shifting explanations, falsity of explanation, deviation from standard policy and practice, and change of attitude toward the employee."  ECF No. 23 at 19.  To support this argument, Mr. Conrad cites to Second Circuit Title VII case law that holds that "the lack of knowledge on the part of the particular individual agents is admissible as some evidence of a lack of a causal connection, countering plaintiff's circumstantial evidence of proximity or disparate treatment." Id. at 17 (quoting Gordon v. N.Y. City Bd. of Educ., 232 F.3d 111, 117 (2d Cir. 2000)).[3]

---

[3] CSX asserts that Mr. Conrad's counsel cites Second Circuit authority because he copied portions of his brief from a brief

The flaw in Mr. Conrad's argument is that although he is correct that the contributing factor causation standard does not depend on the decision maker's state of mind alone, this argument relates to the fourth factor of the AIR-21 test rather than the second "knowledge" factor.  Knowledge becomes one factor to be considered among many in contributing factor standards when, as in Title VII case law, there is no separate knowledge requirement.  See Chao v. Int'l Business Machines Corp., 424 F. App'x 259, 261 (4th Cir. 2011) ("A plaintiff in a [Title VII] retaliation case must show that: (i) he engaged in protected activity; (ii) his employer took an adverse action against him; and (iii) there is a causal connection between the protected activity and the adverse action.").  In the AIR-21 test, however, whether knowledge of an employee engaging in protected activity can be imputed to the employer must be evaluated separately from whether the protected activity was a contributing factor in the decision to take the adverse employment action.  See Kuduk v. BNSF Ry. Co., 768 F.3d 786, 791 (8th Cir. 2014) (evaluating the district court's grant of summary judgment first by analyzing whether or not the employer had knowledge and then addressing whether the protected activity was a contributing factor to the adverse employment decision).

---

submitted in Young v. CSX Transp., Civ. No. 12-cv-1150-DNH-TWD, a case in the Northern District of New York.  ECF No. 26 at 14, n. 4.

While the Court does not agree with CSX's contention that the second factor of the AIR-21 test can only be met when the decision maker has knowledge of the employee's protected activity, the Court holds that at least one person involved in the adverse employment decision must have knowledge of the protected activity, even if it is an advisor or upper management.  See Rudolph v. Nat'l Ry. Passenger Corp, ARB Case No. 11-037, 2013 DOL Ad. Rev. Bd. LEXIS 25, 40 (March 29, 2013) ("The knowledge of those who advised [the decision maker] . . . such as those in Amtrak's legal department, is imputed to [the decision maker.]"); Kuduk v. BNSF Ry. Co., 980 F. Supp. 2d 1092, 1100 (D. Minn. 2013), aff'd 768 F.3d 786 (2014) (granting summary judgment on ground that "[p]laintiff has submitted no evidence that [his supervisor] or anyone in higher management that reviewed the dismissal decision had actual or constructive knowledge of [p]laintiff's protected activity").

Mr. Conrad has not provided sufficient admissible evidence from which a jury could conclude that there was any knowledge of his alleged protected activity among any of the individuals involved in the decision-making process to discipline him.  Mr. Conrad does argue broadly that he was considered a "thorn in the side" of CSX management.  ECF No. 23 at 24.  He points to the following activities as establishing his status as an annoying advocate for his union members: making "certain that his members

knew of the Family Medical Leave Act;" making "complaints to the
Ethics Hotline and recommending that when appropriate his
members do the same;" providing "members with CSX PI-82 forms
used to report unsafe conditions;" and publishing a monthly
union newsletter, one of which encouraged the reporting of
accidents according to company rules.  ECF No. 23 at 24-25.  He
also identifies times in which supervisors Mr. Diamond, Mr.
Morriss, and Trainmaster Steve Hannison reacted negatively to
these activities.  Id.

Although these facts might establish that Mr. Conrad was a
vociferous employee, they do not demonstrate that, from his
history of activity, his supervisors knew that he engaged in
FRSA protected activity.  Increasing awareness of leave rights,
making calls to an ethics hotline, or participating in union
activity is not intimately linked to federal safety rules and
regulations to make managers aware that Mr. Conrad was engaging
in protected activity.  Mr. Conrad also fails to show that
anyone at CSX knew of his distributing and promoting PI-82
forms, an activity that could fall under FRSA protection.

Next, Mr. Conrad argues that since someone at CSX was aware
of his activity in the Deineen and Demmler Yard incidents, CSX
had the requisite knowledge of his protected activity.  A finder
of fact, however, could not conclude from the evidence that
people involved in his discipline were aware of his protected

activity, as required by AIR-21.  As to the Deineen incident,
Mr. Conrad states that he "promptly informed Trainmaster Ron
Baer that he was going to report the violation to the FRA."  ECF
No. 23 at 23.  Mr. Drummond, Mr. Koelker, Mr. Stafford, and Mr.
Morriss, however, were the CSX managers who observed Mr. Conrad
fail to properly operate the bow-handled switch and Mr. Stafford
was the one who spoke with him after the incident.  Mr. Baer was
neither present to observe the activity that gave rise to the
first violation nor a part of the decision making process to
discipline Mr. Conrad.  Instead, Mr. Conrad hypothesizes that
CSX management must have engaged in a series of communications
through which it became widely known that Conrad had made the
Hours of Service Act Report.  He posits that Mr. Baer told Mr.
Morriss, among others, about Mr. Conrad's complaint, and then
Mr. Morriss told Mr. Stafford about the activity and directed
him to bring disciplinary charges against Mr. Conrad.  Mr.
Conrad, though, does not provide any evidence to support this
theory beyond the fact that Mr. Stafford is Mr. Morriss'
assistant.  ECF No. 23 at 25.  Standing alone, this fact is
insufficient to conclude that a jury could make a "reasonable
inference" that the individuals who charged Mr. Conrad with
operating the bow-handled switch with one hand also knew about
the Deineen incident.

As to the Demmler Yard incident, Conrad contends that CSX "cannot honestly dispute its knowledge of Mr. Conrad's protected activities," ECF No. 23 at 32, since Conrad communicated directly to Ms. Renner, a CSX employee.  Ms. Renner, however, did not play any role in assessing the second infraction that Mr. Conrad claims was a direct result of his forbidding his union members to go into Demmler Yard.  The Court, therefore, concludes that Mr. Conrad has not proffered sufficient evidence from which a jury could find that any CSX employee involved in the decision to assess the two disciplinary infractions against him had actual or constructive knowledge of his protected activity.

**IV. CONCLUSION**

For the reasons stated above, the Defendant's Motion for Summary Judgment will be granted.

_____/s/_____
William M. Nickerson
Senior United States District Judge

DATE: December 15, 2014